# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br>v.<br><br>NICKOLAS A. DOHERTY,<br><br>           Defendant. | Case No. 16-CR-151-JPS<br><br><br><br><br><br>**ORDER** |

On January 25, 2017, the Court issued an order adopting Magistrate Judge Nancy Joseph's Report and Recommendation on Defendant's motion to suppress. (Docket #26). The Court also dismissed both counts of the indictment with prejudice. *Id.* Further review of the record reveals that the Court's order was premature, and so it now issues this order with the benefit of the parties' briefing on Defendant's objection to the report and recommendation. (Docket #25). For the reasons stated below, the Court will adopt the report and recommendation in full and dismiss Count Two of the indictment.

1. **BACKGROUND**

Defendant is charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). (Docket #1). The charges rise from a traffic stop conducted by officers of the Cudahy Police Department on July 11, 2015. (Docket #22 at 1). After stopping the car in which Defendant was a passenger, officers performed a *Terry* frisk on Defendant and found marijuana. *Id.* at 2–11. They also found a firearm, which Defendant admitted was his, on the floor of the vehicle. *Id.*; (Docket #11 at 4–5).

Defendant filed a motion to suppress, arguing that neither the traffic stop nor the *Terry* frisk was supported by sufficient cause. *See id.*; (Docket #17 at 1–2). Defendant claims that the officers lacked probable cause to stop the vehicle for speeding. He also argues that the officers lacked reasonable suspicion to perform the *Terry* frisk. In her report and recommendation, Magistrate Joseph agreed with Defendant on the second argument, but not the first. (Docket #22 at 11–17). She recommended that the Court suppress the evidence obtained as a result of the *Terry* frisk. *Id.* at 17–18.

The distinction between Magistrate Joseph's two conclusions bears an important relation to the charges in the indictment. Suppression of the marijuana obtained from the *Terry* frisk leads to dismissal of Count Two of the indictment—the drug charge. However, Defendant's gun was found on the floor of the vehicle, not on his person. Moreover, he has not challenged the search of Dunson's car which uncovered the gun. Thus, dismissal of Count One of the indictment—the felon-in-possession charge—would only be appropriate if all the evidence obtained as a result of the initial traffic stop was suppressed.

On January 20, 2017, Defendant filed an objection to Magistrate Joseph's Report and Recommendation. (Docket #25). The government responded on January 30, 2017. (Docket #27). Defendant did not file a reply.

2. **STANDARD OF REVIEW**

When reviewing a magistrate's recommendation, the Court is obliged to analyze the recommendation *de novo*. 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* The Court's review

encompasses both the magistrate's legal analysis and factual findings. *Id.*

3. **ANALYSIS**

    3.1 **Magistrate Joseph's Report and Recommendation**

Magistrate Joseph held an evidentiary hearing on Defendant's motion and took testimony from the officers involved in the stop and searches. (Docket #14). Relevant here is the testimony of Officer Janelle Jurkiewicz ("Jurkiewicz"). Jurkiewicz is an eleven-year veteran of the police force who performs general patrol duties, traffic enforcement, and responding to calls, among other things. (Docket #22 at 2); (Docket #15 5:1–10). She testified that on July 11, 2015, she was traveling southbound on Kinnickinnic Avenue in her squad car and observed a white Mitsubishi—the car in which Defendant was a passenger—traveling at a high rate of speed headed northbound on Kinnickinnic Avenue. (Docket #22 at 2); (Docket #15 6:8–20). The car was being drive by Deshay Dunson ("Dunson"). (Docket #22 at 2).

After observing the vehicle traveling at a high rate of speed, Jurkiewicz looked at her radar unit mounted on the dash and saw that Dunson's vehicle was traveling at 54 miles per hour. *Id.*; (Docket #15 6:21–25). She observed this for several seconds and then saw the vehicle go up to 55 miles per hour. (Docket #22 at 2); (Docket #15 6:22–7:1). The posted speed limit was 30 miles per hour. (Docket #22 at 2); (Docket #15 7:2–3). Jurkiewicz testified that while she could not remember whether she checked the accuracy of her radar unit that day, it was a routine part of her shift to check the radar with tuning forks and the radar's internal test at the beginning and end of each shift. (Docket #22 at 14); (Docket #15 18:11–19:1).

Based on this evidence, Magistrate Joseph concluded that

Jurkiewicz had probable cause to stop the car for speeding. Probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (internal quotation and citation omitted). In making probable cause determinations, law enforcement agents are entitled to draw reasonable inferences from the facts before them, based on their training and experience. *Id.* With respect to traffic stops, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). This includes even a minor traffic violation. *United States v. Garcia–Garcia*, 633 F.3d 608, 612 (7th Cir. 2011) (citations omitted) ("When a police officer reasonably believes that a driver has committed a minor traffic offense, probable cause supports the stop.").

Applying these principles, Magistrate Joseph concluded that Jurkiewicz's observations of the car's movement, coupled with the radar reading, established probable cause to stop the car for speeding. (Docket #22 at 12–13). She also rejected Defendant's arguments to the contrary. *Id.* at 13–14. First, Defendant claimed that because Jurkiewicz and Dunson's cars were traveling towards each other, it would be difficult to "eyeball" the speed of the approaching car. *Id.* at 13. Magistrate Joseph disagreed, noting that an officer like Jurkiewicz, applying her training and experience, could reasonably determine whether Dunson's car was traveling faster than the normal flow of traffic, which presumably travels at the speed limit. *Id.*

Second, Defendant asserted that Jurkiewicz's radar unit may not have been a "moving" radar unit that was capable of accounting for the

fact that it was moving while making a reading. *Id.* If this was true, then the reading she took would not have been accurate but would have incorrectly reflected the combined speed of her car and Dunson's. *Id.* Further, according to Defendant, even if the radar unit was a "moving" radar unit, the government was required to establish several foundational elements under Wisconsin law for admission of its reading as evidence. *Id.* Again, Magistrate Joseph disagreed, noting that Defendant's arguments, and the applicable Wisconsin law, pertained to proving a charge of speeding beyond a reasonable doubt. *Id.* at 14. In this case, Magistrate Joseph reasoned, the government need not offer such proof; instead, it only needed to show that Jurkiewicz reasonably believed that the car was speeding. Even if the radar was not proven to be precisely accurate, it was sufficient that the radar indicated a speed at nearly twice the speed limit. *Id.*

### 3.2 Defendant's Objections to the Report and Recommendation

Defendant objects to Magistrate Joseph's findings and conclusions with respect to the traffic stop. First, he contests the finding that Jurkiewicz's radar unit showed the speed of Dunson's vehicle. (Docket #25 at 2). His view is that the reading showed the speed of both cars combined absent some evidence that the car was equipped with "moving" radar. *Id.* Second, he reiterates the legal arguments he made to Magistrate Joseph, including that it would be difficult for Jurkiewicz to eyeball the speed of Dunson's car as it approached, and that the government failed to show that the radar unit's reading was reliable by providing evidence that it was a proper "moving" radar unit. *Id.* at 3–6.

The Court finds Defendant's arguments unavailing. First, as to the

"eyeballing" argument, Defendant contends that "no testimony or other evidence established that Officer Jurkiewicz was such an experienced traffic officer that she could accurately predict the speed of a vehicle while she was moving in the opposite direction, or that she had been trained in estimating vehicle speeds under these trying circumstances." *Id.* at 3. The quality and quantity Defendant expects to see not only misunderstands the probable cause standard, it also neglects Jurkiewicz's experience as a police officer. She testified that she had spent eleven years as an officer and, as part of her duties, she regularly performed traffic enforcement. Defendant did not attack her experience in this regard. Defendant may be right that a lay person would have difficulty judging the speed of an oncoming vehicle, but Jurkiewicz is not such a person. Thus, contrary to Defendant's belief, hers was not an "untrained guess" as to the vehicle's speed. *Id.* at 4. The Court finds Jurkiewicz's long experience as a police officer performing traffic enforcement gives her testimony about the speed of an approaching vehicle substantial credence. *United States v. Peters*, 743 F.3d 1113, 1117 (7th Cir. 2014) (affirming district court's finding that officer's years of experience made his assessment of vehicle speed more credible); *United States v. Paoloca*, 36 F.3d 1099, 1994 WL 534760, at *3 (7th Cir. 1994) ("Courts have recognized that police officers are instructed in their law enforcement training to determine the speed of a motor vehicle" and that "judging the speed of a car is neither a skill nor a particular talent that requires extensive experience.").

Further, Defendant never explains what was especially "trying" about the circumstances of Jurkiewicz's encounter with Dunson's car, and the Court finds that, in light of Jurkiewicz's extensive experience on the police force, the mere fact that the two cars were travelling towards each

other does not constitute a "difficult circumstanc[e]" that would undermine her ability to judge the speed of Dunson's car. *Id.* Nor is Jurkiewicz's observation of the car's speed, standing alone, "too slim of a reed to establish probable cause." (Docket #25 at 5); *Paoloca*, 36 F.3d 1099, 1994 WL 534760, at *3; *Peters*, 743 at 1117 (noting that the officer need not use a radar to judge vehicle speed because, as an experienced police officer, he could judge it at sight); *Tapley v. Chambers*, 840 F.3d 370, 377 (7th Cir. 2016) (officer's visual estimation that the vehicle was traveling at a "high rate of speed" supported probable cause determination even though he was unsure of the exact speed of the vehicle).

Likewise, the Court finds Defendant's focus on the radar unit too demanding for the inquiry at hand. The radar reading need not be admissible in evidence to support probable cause, contrary to Defendant's belief. *Id.* at 5; *Brinegar v. United States*, 338 U.S. 160, 173 (1949); *United States v. Ventresca*, 380 U.S. 102, 107 (1965). Moreover, the radar reading in this instance simply served to confirm Jurkiewicz's conclusion that the car was speeding. Its reading showed a speed of 54–55 miles per hour. That reading, coupled with her observation, provided Jurkiewicz with the reasonable belief that Dunson was speeding, which is all that is required to support the traffic stop. *See United States v. Locke*, No. 12–CR–141, 2012 WL 6641481, at *2 (E.D. Wis. Oct. 9, 2012) (even if radar was malfunctioning, the relevant inquiry is whether the officer reasonably believed that the car was speeding, not whether the belief was accurate); *United States v. Cashman*, 216 F.3d 582, 586–87 (7th Cir. 2000) (officers' estimate of the fact undergirding a violation need not be "perfectly accurate"; it need only be reasonable for the officer to believe a violation had occurred); *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005)

(courts "need only inquire whether the officer had probable cause to believe that a traffic violation occurred, not whether [the driver] actually was tailgating."). Because Jurkiewicz had probable cause to believe that Dunson was speeding, the traffic stop was not unlawful.

4. **CONCLUSION**

The Court, having reviewed Magistrate Joseph's report and recommendation and Defendant's objection, finds that it must overrule the objection, adopt the report and recommendation in full, and dismiss Count Two of the indictment. The Court will also issue an amended trial scheduling order to ensure the expeditious resolution of the remaining count in the indictment.

Accordingly,

**IT IS ORDERED** that Defendant Nickolas Doherty's objection to Magistrate Judge Nancy Joseph's Report and Recommendation (Docket #25) be and the same is hereby **OVERRULED**;

**IT IS FURTHER ORDERED** that Magistrate Judge Nancy Joseph's Report and Recommendation (Docket #22) be and the same is hereby **ADOPTED**;

**IT IS FURTHER ORDERED** that Defendant Nickolas Doherty's motion to suppress (Docket #11) be and the same is hereby **GRANTED in part** and **DENIED in part**; and

**IT IS FURTHER ORDERED** that Count Two of the Indictment in this matter (Docket #1) be and the same is hereby **DISMISSED with prejudice**.

Dated at Milwaukee, Wisconsin, this 14th day of February, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge